**455-15**

May 25, 2015 DATE

ORIGINAL

Court of Criminal Appeals of Texas
District Clerk

EXT Due: 2 June 2015

Travis          County

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 01 2015

Abel Acosta, Clerk

Dear Clerk: Abel Acosta

Attached is my Pro Se Motion for
Preliminary Discretionary Review.
Petition for Discretionary Review
Please file this motion. Present it to
the Court for its Consioideration, Please
Advise Me of the Courts Decesion on
this Motion At the Address Below. Your
Cooperation in this matter is Very Much
Appreciated.

FILED IN
COURT OF CRIMINAL APPEALS

JUN 03 2015

Abel Acosta, Clerk

Sincerly,

Sheila Jynell Sanders
Defendant - offender

Name Sheila Jynell Sanders  # 1905466

TDCJ# 1905466

unit Crain Riverside  House # RS - 1B - 05
1401 State School Road
Gatesville, Tx. 76599

ADDRESS

Cover letter

Date May 25, 2015

<< District Clerk    Abel Acosta    >>
<< Travis County Court of Criminal Appeals >>
<< P.O. Box 12308 Capitol Station Austin, Tx. >>
201 W 14TH St. Rm 106 Supreme Court Bldg 78711

       < RE:   Sheila Jynell Sanders    >
       < Cause No:  09-14-00031-CR    >
       < Cause No:  09-14-00032-CR    >
       < Tr.Ct.No: 12-12-12963CR   PD-0455-15  >

Dear Clerk: Abel Acosta

     Enclosed Herewith Please find the Original of
Pro Se Motion for Petition for Discretionary Review
in the Above Styled and Numbered Causes. Please
find these Among the Papers in this Cause and
Bring it to the Attention of the Court. Your
Assistance in this Matter is greatly appreciated.

            Sincerely,

      Name: Sheila Jynell Sanders
       TDCJ#  1905466

Page 1

Cause No: 09-14-00031-CR

Cause No: 09-14-00032-CR

           §    In the District Court of

           § § TRAVIS, County, TEXAS

           § § Court of Criminal Appeals of TEXAS

                Austin, TEXAS Judicial District

Original Petition for Discretionary Review

To the Honorable Judge of Said Court:

Original Answer

Petition for Motion for Discretionary Review

Comes Now, § SHEILA TYNELL SANDERS §, Respondant in
              INMATE NAME
the Above entitled and Numbered Causes and moves this
Honorable Court to ....

REASONS   I. Was Told By Attorney Therapeutic Levels
            Were Under legal limits, Until the Day of Trial.
            2 Different Compounds in This Prescription
            Medicine one Over, one Under Therpeutic Level

           II. Motion in limine Not followed
            No Expert Witnesses and Prior
            Convictions Brought At the VIOR DIRE
            Opening of Trial To Prospective Jurors

           III. Had Been Lethargic For Two Months Plus,
            And Was So In Pain For 70 + Days (Have Drs Rec)
            going To Work Never Missing Bus. At Holidays
            is Extremely Busy My Health Well Run Down.

REASONS

IV. Dr Wainwright Could Not Do Oral Surgery Because of My Health Problems. Infection And Puss Coming Out of Gums. Abcessed Teeth Poison Had My Head Pounding Severely.

V. Appelant's Fourth Admendment Right To Be Free of Unreasonable Search And Seizure - Blood Evidence Without A Warrant And Without Examing Totality of The Circumstances for Exigency Was A Violation of Rights Warrant Requirement for Blood Draw.

VI. My Trial Was Set for 11-18-13 Then I Was Told By My Attorney That The State Was Not Ready. Against My Will He Reset Case To 12-2-13 Because Judge Hamilton Said It Had To Be Heard. Was Not Happy About It. Then She Could Not Hear Trial, Reset To A Stand In Judge. Then I Look At the Courts Order I got Transcripts And See That My Attorney Knew About Reset (10/31/13 Orders of The Court) Him AND D.A Had Already Reset. So I was Lied To (Set for Trial on 11-18-13)

Respectfully Submitted,
SHEILA JYNELL SANDERS Inmate Name
RESPONDANT Pro Se
TDCJ# 1905466
CRAIN RIVERSIDE RS-1B-05
1401 State School Rd Gatesville, Tx. 76599

page 3

# Certificate of Service

I, = Sheila Jynell Sanders =, Respondant Pro Se, Do Hereby Certify that a true and correct copy of the above and foregoing Motion for Petition for Discretionary Review has been forwarded by United States Mail, Postage Prepaid, first Class, to Court of Criminal Appeals of Texas

P.O. Box 12308, Capitol Station

Supreme Court Bldg 201 W. 14TH St. Rm #106

Austin, Tx. 78711

on this the 27 day of May 2015.

Inmate
Name: Sheila Jynell Sanders #1905466

Respondant Pro Se

# In The

# *Court of Appeals*

# *Ninth District of Texas at Beaumont*

---

NO. 09-14-00031-CR
NO. 09-14-00032-CR

---

## SHEILA SANDERS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

## On Appeal from the 359th District Court
## Montgomery County, Texas
## Trial Cause No. 12-12-12963 CR (Counts 1 and 2)

---

## MEMORANDUM OPINION

In this appeal, we are asked to determine whether the trial court abused its

discretion in finding that Sheila Sanders[1] voluntarily consented to a State trooper's

request for a sample of her blood that the State then used to test for the presence of

intoxicants. We conclude the trial court's ruling on the question of consent is

---

[1]The clerk's record lists defendant's name as Sheila Jynell Sanders a/k/a
Sheila Jynnal Sanders.

1

supported by the evidence admitted during Sanders' trial; therefore, we affirm the defendant's convictions.

Background

After he was notified that an SUV was seen driving erratically on Interstate 45 one afternoon in December 2012, Trooper Joshua Pullen[2] saw a vehicle that matched the one described in the information he received about a car being driven in a reckless manner. By using his radar, Trooper Pullen determined that the SUV he saw, which matched the one he was looking for, was being driven approximately nine miles per hour below the posted speed limit. When the SUV passed his patrol car, he accelerated, and he then activated his lights to stop the SUV. The driver pulled partially onto the shoulder, as if to stop, but the SUV then travelled back into the main lanes of the highway. With the assistance of other officers and their vehicles, which formed a box around the SUV to slow it down, the SUV's driver stopped approximately six miles from the location where it initially passed Trooper Pullen's car.

After stopping the SUV, Trooper Pullen determined that the SUV was being driven by Sheila Sanders. He also noticed that Sanders appeared to be disoriented.

---

[2]Prior to the trial, Trooper Pullen received a promotion; however, we refer to him as Trooper Pullen in the opinion, as he was employed in that capacity during the period that is relevant to Sanders' arrest.

2

Trooper Pullen testified that he thought Sanders showed several signs of intoxication, although he did not smell any alcohol on her during the stop. After performing a horizontal gaze nystagmus (HGN) test, Trooper Pullen detected six out of six possible clues of intoxication as positive. Additionally, Trooper Pullen characterized the responses that Sanders gave him to his questions as "[c]onfused."

Trooper Pullen testified that he arrested Sanders because he suspected that she had been driving while intoxicated. After having Sanders sit in the front passenger seat of his car, Trooper Pullen informed Sanders of her Miranda[3] rights. However, she agreed to continue to talk with him. When asked whether she was on any medications, Sanders denied taking any, except she stated that she had taken over-the-counter pain pills to relieve the pain she was having with her teeth. According to Trooper Pullen, he gave Sanders a copy of the statutory warnings[4] and played an audio recording that relates to the arrest of persons who are

---

[3]See *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (requiring that a suspect be warned prior to being subjected to a custodial interrogation).

[4]Trooper Pullen identified the form containing the warnings as "[t]he DIC-24 statutory warning[;]" his testimony undoubtedly refers to the DIC 24 Mandated Statutory Warning, a warning required to be given by law enforcement officials to warn those arrested for driving while intoxicated of the consequences of a refusal to consent to the State's request for a breath or blood specimen. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2014). The officer also is to warn the suspect that if the request for a voluntary specimen is refused, the officer may apply for a warrant that would authorize a specimen to be taken. *See id.*

3

suspected of violating the law by driving while intoxicated. After Sanders received the statutory warnings, she consented to Trooper Pullen's request that she provide him a sample of her blood.

During the trial, Sanders asked the trial court to suppress the results of the blood alcohol test. In her motion, Sanders asserted that her consent was involuntary and that the results of the test were obtained without a warrant in violation of her constitutional rights. The trial court conducted the suppression hearing outside the jury's presence on the first day of Sanders' trial. After hearing the testimony about the circumstances that led to Sanders' arrest, and a video recording in which Sanders responded "sure" when Trooper Pullen requested the specimen at issue, the trial court denied Sanders' motion to suppress. At the conclusion of the hearing, the trial court noted:

> [A]fter reviewing the videotape and looking at the way [Sanders] acted at the scene, she did seem to comprehend the questions she was being asked. . . .
>
> . . . I do think that she was able to adhere to simple commands, such as "stand here with your arms down," "come sit over here in your car," "make sure you don't move because if you move, it will hurt your arms" and she said "thank you." And there were things she said that indicated an understanding of what he was saying to her. Sometimes she answered, what I would term, in a vague bizarre fashion; but for the most part, I think she understood what was going on.

I have seen wors[e] cases. I don't think that her disorientation had an effect on it. . . .

The trial court concluded from the evidence that Sanders voluntarily consented to providing Trooper Pullen a specimen of her blood.[5] With respect to Sanders' claim that she did not consent to provide a sample, the trial court's finding that she consented is reviewed using a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). Under that standard, the trial court's factual findings are reviewed under an abuse of discretion standard. *Id.* The trial court's determination of historical facts is given almost total deference, if such determination was based on credibility assessments and the determination is supported by the record. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). However, legal conclusions the trial court made that do not turn on a credibility assessment are reviewed as mixed questions of law and fact, using a *de novo* standard. *Id.*

In suppression hearings, the trial court acts as the exclusive trier of fact, and it judges the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281

_____

[5]During the hearing, the trial court also mentions that Sanders' consent was not required because she had two prior convictions on charges of driving while intoxicated. On appeal, Sanders argues that the statutory consent provision referenced by the trial court did not relieve the State of the requirement that it obtain a warrant. *See* Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011); *see also State v. Stewart*, No. 09-13-00421-CR, 2014 WL 5855905 (Tex. App.—Beaumont Nov. 12, 2014, no pet.) (mem. op., not designated for publication).

5

(Tex. Crim. App. 2002). Acting as the trier of fact, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court makes express findings of fact, we view the evidence in the light most favorable to her ruling and determine whether the evidence supports the factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). A trial court's findings on a motion to suppress may be written or oral.[6] *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006).

In light of the trial court's ruling that Sanders' consent was voluntary, a finding that was reasonable based on the evidence that concerns Sanders' stop, we conclude the State was not required to obtain a warrant. *See State v. Anderson*, 445 S.W.3d 895, 902 (Tex. App.—Beaumont 2014, no pet.), *citing McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (explaining that a voluntary consent to a

---

[6]Although neither party moved for written findings of fact and conclusions of law, and none were filed, it is apparent from the record that the trial court intended to express its findings and conclusions based on its oral pronouncements. When reviewing a motion to suppress, oral findings of fact can be considered as findings of fact on the record and are given due deference. *See, e.g., State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (stating that the trial court's findings and conclusions from the suppression hearing need to be recorded in some way, whether written out and filed by the trial court or stated on the record at the hearing); *Flores v. State*, 177 S.W.3d 8, 13-14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (reviewing trial court's oral findings of fact on a motion to suppress).

6

search is an exception to the requirement that the State obtain a search warrant). Additionally, nothing in the record suggests that Sanders withdrew her consent before her blood was drawn. Viewed in the light most favorable to the trial court's ruling, we hold the trial court's ruling does not lie "outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *accord State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We overrule Sanders' issue,[7] and we affirm the trial court's judgments.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 15, 2014
Opinion Delivered March 4, 2015
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

_____

[7]We need not address Sanders' remaining arguments, as the resolution of her remaining arguments is unnecessary to our disposition of the issue she raises in her appeal. *See* Tex. R. App. P. 47.1.

7